**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JOANNE HARP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **LIBERTY MUTUAL INSURANCE COMPANY,** | § | **SA-08-CV-0655 FB (NN)** |
| | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**

**TO: Hon. Fred Biery**
**United States District Judge**

This report and recommendation addresses defendant Liberty Mutual Insurance Company's (Liberty) motion for summary judgment.[1] Previously, the district judge accepted my recommendation to deny Liberty's motion to dismiss. Since that time, Liberty moved for summary judgment on all of Harp's claims. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2] After considering the pleadings, applicable law and summary-judgment evidence, I recommend granting the motion and entering summary judgment in favor of Liberty. I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial matters to me for disposition by order or to aid the district court by

---

[1]Docket entry # 12.

[2]Fed. R. Civ. P. 56(c).

recommendation where my authority as a magistrate judge is statutorily constrained.[3]

Initially, Harp filed this case pro se and complained that Liberty breached its duty of good faith and fair dealing by denying or delaying her claim for workers' compensation benefits after she sustained an on-the-job injury. Harp later obtained counsel and amended her complaint. In the amended complaint, Harp complained about: (1) alleged violations of the Texas Insurance Code, (2) an alleged breach of the duty of good faith and fair dealing, and (3) alleged violations of the Texas Deceptive Trade Practices Act based on the alleged violations of the Texas Insurance Code.[4] Harp sought compensatory, consequential, and punitive damages. Each of Harp's claims is based on her allegation that Liberty mishandled her claim for her on-the-job injury.

Harp was injured at work on July 10, 2006, when a desk drawer fell and struck Harp's right great toe. Harp alleges that Liberty denied and/or delayed payments for this injury. Whether Liberty denied and/or delayed payments is a material question of fact[5] for each of Harp's causes of action because the resolution of that question affects the outcome of the lawsuit.[6] The summary-judgment evidence, however, shows that Liberty did not delay and/or

---

[3]Docket entry # 2.

[4]*See* docket entry # 28.

[5]*See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[6]*See* docket entry # 28, ¶¶ 3.1 to 3.4 (setting out the factual background for Harp's case), ¶ 4.1 (incorporating the allegations in the factual background for Harp's cause of action for violation of the Texas Insurance Code), ¶ 5.1 (incorporating the allegations in the factual background for Harp's cause of action for breach of the duty of good faith and fair dealing), & ¶ 7.1 (incorporating the

deny payment. Instead, the summary-judgment evidence shows that Liberty paid temporary income and medical benefits, while disputing the extent of the injury. The only evidence showing that Liberty denied and/or delayed payments is Harp's conclusory allegations.[7] A summary of the relevant[8] summary-judgment evidence follows.

Liberty's claim adjuster—Mary Sollock—interviewed Harp on July 25, 2006. Harp reported that she had injured her right foot.[9] Harp's treating physician—Dr. Daniel Boyle—however, reported that Harp suffered "contusion to the right foot; left knee bursitis."[10] Dr. Boyle did not explain how left knee bursitis related to the reported injury—the injury to the right foot. Dr. Boyle also indicated that Harp had a pre-existing chronic regional pain syndrome (CPRS), due to a 1997 injury to the right foot. Without an explanation whether the 2006 toe injury related to CRPS or left knee bursitis, Liberty initiated payments and sent Harp a Notice of Disputed Issues and Refusal to Pay to dispute "all medical & indemnity benefits for the diagnosis and treatment of left knee bursitis and treatment of RSD [CRPS]."[11] Liberty advised Harp that it had no "medical documentation establishing causal connection between these symptoms and the

---

allegations in the factual background for Harp's cause of action for violation of the Texas Deceptive Trade Practices Act).

[7] *See* docket entry # 43, exh. E.

[8] "'Relevant evidence'" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

[9] *See* docket entry # 41, exh. A-1, p. 6.

[10] *See* docket entry # 41, exhs. A-10 & A-11.

[11] *Id.*, exh. A-9.

workplace and compensable injury and diagnosis of right great toe."[12] Sollock sought medical records from Dr. Boyle, but she received no documentation linking "contusion to the right foot" to "left knee bursitis" or CRPS.[13] When Dr. Boyle received a copy of the notice, he responded to Sollock with a letter accusing Liberty of trying to "slither out" of its responsibilities to take care of Harp.[14] Despite Dr. Boyle's reaction, no evidence shows that Dr. Boyle provided medical records linking the injury to Harp's right great toe to his other diagnoses. Liberty, however, continued to pay temporary income benefits and to pay for Harp's medical expenses.[15]

On September 7, 2006, Sollock learned that Dr. Boyle referred Harp to a pain management specialist relating to a diagnosis of chronic femoral pain syndrome, a right foot cyst, knee pain, bursitis and CRPS.[16] Because it lacked medical records linking the right-foot injury to the other diagnoses, Liberty sent Harp a second Notice of Disputed Issues and Refusal to Pay Benefits on November 13, 2006, disputing "all medical and indemnity benefits for the diagnosis and treatment of Chronic femoral Pain Syndrome, right foot bone cyst, knee pain, bursitis and complex regional pain syndrome."[17] Liberty advised that it had "no medical documentation establishing a causal connection between these symptoms and the workplace, or the compensable

---

[12]*Id*.

[13]*See* docket entry # 43, exh. F, pp. 20-21, 29-30, 40 & 53-54.

[14]*See* docket entry # 41, exh. 16.

[15]*See* docket entry # 43, exh. F, pp. 10-12, 24 & 52.

[16]Docket entry # 41, exh. A, ¶ 9.

[17]*See* docket entry # 41, exh. A-12.

injury of the right great toe."[18] Ultimately, it took an order from the Texas Department of Insurance to obtain medical records from Dr. Boyle.[19]

The parties settled the dispute over the extent of Harp's injury at a contested hearing before the Division of Workers' Compensation on February 12, 2007. An agreed order was entered, establishing that Harp's compensable injury included CRPS of the right leg and hip, chronic femoral pain syndrome and right knee bursitis, but not left knee bursitis.[20] Throughout this process, Liberty paid temporary income benefits and paid for Harp's medical treatment.[21]

Considering the undisputed evidence that Liberty paid temporary income and medical benefits—without delay—it is difficult to ascertain why Harp thinks Liberty acted wrongfully. Harp's deposition examination of Sollock indicates Harp believes Liberty mishandled her claim because Liberty questioned whether Dr. Boyle's multiple diagnoses related to the great-right-toe injury.[22] That position is unreasonable because Liberty had no medical records linking Dr. Boyle's multiple diagnoses to the great-right-toe injury and because Liberty paid temporary income benefits and paid for Harp's medical treatment while disputing the extent of Harp's injury. Although Harp insists that the delay of medical treatment caused her severe economic

---

[18] *Id.*

[19] *Id.*, exh. A-14. *See id.*, exh. A-13 (Liberty's letter seeking assistance from the Division of Workers' Compensation in obtaining medical documentation from Dr. Boyle).

[20] *See* docket entry # 41, exh. 20.

[21] *See* docket entry # 41, exhs. A-3, A-5 & L.

[22] Docket entry # 43, exh. F, pp. 17-31, 34-40, & 52-54.

distress and worsened her condition, no evidence shows delay or denial.[23] Liberty perhaps summed it up best in its reply to Harp's response to the motion for summary judgment: "It is as if Plaintiff is briefing a different case than the one before the Court. It is undisputed that no income or medical benefits were delayed or denied."[24]

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[25] All of Harp's claims are based on the same allegation—the allegation that Liberty delayed or denied paying Harp's workers' compensation claim. Liberty advanced numerous arguments about why it is entitled to summary judgment, why Harp's claims are invalid, and why Harp's summary-judgment evidence should be striken.[26] But the district court need not address the merits of those arguments because the summary-judgment evidence raises no fact question about whether Liberty delayed and/or denied Harp's claim. To the extent that Harp relies on Liberty's Notices of Disputed Issues and Refusal to Pay Benefits as evidence of delay or denial, or evidence that Liberty failed to properly investigate her claim, such reliance fails for the following reasons: (1) Liberty paid temporary income benefits without delay, (2) Liberty paid for Harp's medical treatment without delay, (3) Sollock sought out medical records linking Dr. Boyle's diagnoses to Harp's great-right-toe injury, and (4) Liberty followed proper procedures for medical bills involving treatment it

---

[23]Docket entry # 43, exh. E.

[24]*See* docket entry # 46, p. 2.

[25]*Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

[26]Docket entry # 45.

believed was not related to the compensable injury.[27] Liberty is entitled to summary judgment on all of Harp's claims because no genuine issue of fact exists.

**Recommendation**. I recommend GRANTING Liberty's motion (docket entry # 41) and ENTERING SUMMARY JUDGMENT in favor of Liberty.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[28] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[29] Additionally, failure to file timely written objections

---

[27] *See* 28 Tex. Admin. Code § 124.3(e) (2009) (Tex. Dep't of Ins., Investigation of an Injury and Notice of Denial/Dispute) ("If a carrier receives a medical bill that involves treatment(s) or service(s) that the carrier believes is not related to the compensable injury, the carrier shall file a notice of dispute of extent of injury (notice of dispute).").

[28] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[29] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[30]

**SIGNED** on June 8, 2009.

Nancy Stein Nowak

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[30]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).